## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

| | |
|---|---|
| **Jassid Tillman,** | |
| *Plaintiff*, | |
| v. | |
| **Andrew Robert Dunn,** | |
| **Niizhwaaswi, LLC,** | Case No.      0:20-cv-61942 |
| **Niswi, LLC,** | |
| **Pinnacle Acquisitions, LLC,** | |
| **LDF Holdings, LLC,** | |
| **Creditserve, Inc.,** | |
| **Eric Welch,** | **JURY TRIAL DEMANDED** |
| **RBC Servicing, LLC,** | |
| **Skytrail Servicing Group LLC,** | |
| **William C. Pruett,** | |
| **The Iipay Nation of Santa Ysabel,** *and* | |
| **Blue Dart Ventures, LLC,** | |
| *Defendant*s. | |

### COMPLAINT & JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Jassid Tillman** ("**Mr. Tillman**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Andrew Robert Dunn** ("**Dunn**"), **Niizhwaaswi, LLC** ("**Niizhwaaswi**"), **Niswi, LLC** ("**Niswi**"), **LDF Holdings, LLC** ("**LDF Holdings**"), **Creditserve, Inc**. ("**Creditserve**"), **Eric Welch** ("**Welch**"), **Pinnacle Acquisitions, LLC** ("**Pinnacle**"), **RBC Servicing, LLC** ("**RBC**"), **Skytrail Servicing Group, LLC** ("**Skytrail**"), **William C. Pruett** ("**Pruett**"), **The Iipay Nation of Santa Ysabel** ("**Iipay Nation**"), **Blue Dart Ventures, LLC** ("**Blue Dart**") (collectively, "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Tillman against all Defendants for violations of

the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**"), and against Pruett and RBC

for violations of the Florida *Civil Remedies for Criminal Practices Act*, Florida Statute § 772.104

("**CRCPA**") and the *Florida Consumer Collection Practices Act*, Florida Statute *et. seq.* § 559.55

("**FCCPA**").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's FCRA claims arises under the FCRA, 15

U.S.C. § 1681p and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3.      This Court has supplement jurisdiction for Plaintiff's FCCPA and CRCPA claims

under 28 U.S.C. § 1367.

4.      The Defendants are subject to the jurisdiction of this Court pursuant to Section

48.193, Florida Statutes and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Southern District of Florida, pursuant to 28 U.S.C.

§1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Mr. Tillman

6.      **Mr. Tillman** is a natural person residing in Coral Springs, Broward County,

Florida.

7.      Mr. Tillman is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c) and the

FCCPA, Section 559.55(8), Florida Statutes.

### LDF Holdings

8.     **LDF Holdings** claims to be a wholly-owned subsidiary of the ***Lac du Flambeau Band of Lake Superior Chippewa Indians*** ("**LDF Tribe**").

9.     LDF Holdings acts as the parent company to dozens of payday lending companies chartered by the LDF Tribe.

10.     LDF Holdings claims to operate from the second floor of a cigarette store called the Smoke Shop at **597 Peace Pipe Road, Lac du Flambeau, WI 54538.**

11.     The president of LDF Holdings is **Jessi Lee Phillips Lorenzo** ("**Lorenzo**"), who resides at **502 S. Fremont Ave., Apt. 1107, Tampa, FL 33606.**

### Niswi

12.     **Niswi** is a limited liability company which conducts online lending via its website, www.lendumo.com ("**LendUMo**").

13.     Niswi, through LendUMo, provides online payday loans to consumers at interest rates in excess of 700% annually.

14.     Niswi also claims to be a commercial enterprise and instrumentality of the LDF Tribe.

15.     Niswi conducts business in Florida over the internet, via postal mail, via Automated Clearing House transactions, and over the telephone.

### Pinnacle, formerly known as Soaren Management

16.     **Pinnacle** is a Delaware limited liability company who can be served at **Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808**.

17.     Pinnacle previously merged with or purchased another Delaware limited liability company, Soaren Management, LLC, which operated from 20830 N. Tatum Blvd., Suite 115, Phoenix, AZ 85050.

18.     Pinnacle is a continuation of Soaren.

**Dunn**

19.     **Dunn** is a natural person, and on information and belief, the CEO of Pinnacle.

20.     Dunn and Pinnacle are the true beneficial owners of Niswi, along with its LendUMo website.

21.     Dunn resides at **10202 N 58th St., Paradise Valley, AZ 85253.**

**Niizhwaaswi**

22.     **Niizhwaaswi** is a limited liability company that conducts online lending under the fictitious name "***Loan at Last***" via its website, www.loanatlast.com.

23.     Niizhwaaswi claims to be a wholly-owned subsidiary of LDF Holdings and a commercial enterprise of the LDF Tribe.

24.     Niizhwaaswi conducts business in Florida over the internet, via postal mail, via Automated Clearing House transactions, and over the telephone.

**Creditserve**

25.     **Creditserve** is a California corporation with a primary business address reported as **137 N. Larchmont Blvd., Suite 705, Los Angeles, CA 90004**.

26.     Creditserve's registered agent is Christopher Chatham, **3109 W. Temple St., Los Angeles, CA 90026**.

**Welch**

27.     **Welch** is a natural person, believed to reside at 137 N. Larchmont Blvd., #705, Los Angeles, CA 90004 or in the Dallas, TX area.

28.     Welch is the owner and CEO of Creditserve.

**RBC**

29.     RBC is a Texas limited liability company that conducts online lending via its website, www.riverbendcash.com.

30.     According to its website, RBC's "Standard Biweekly Loan" bears an annual interest rate of **779.76%**. **SEE PLAINTIFF'S EXHIBIT A.**

31.     Despite lending to consumers in Florida, RBC has not registered with the Florida Office of Financial Regulation as a foreign entity transacting business in Florida and holds no Florida licenses.

32.     RBC's principal business address is **1614 Hampton Rd., Texarkana, TX 75503.**

33.     RBC's Texas registered agent is **Incorp Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701.**

**Skytrail**

34.     **Skytrail** is a Texas limited liability company that conducts online lending via its website, www.skytrailcash.com.

35.     According to its website, Skytrail's loans carry a "standard interest rate" of 780.30%. **SEE PLAINTIFF'S EXHIBIT B.**

36.     Despite lending to consumers in Florida, Skytrail has not registered with the Florida Office of Financial Regulation as a foreign entity transacting business in Florida and holds no Florida licenses.

37.     Skytrail's principal business address is **1614 Hampton Rd., Texarkana, TX 75503.**

38.     Skytrail's Texas registered agent is **Incorp Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701.**

## Pruett

39.     **Pruett** is a natural person residing at **6801 Summerhill Rd., Texarkana, TX 75503.**

40.     On information and belief, Pruett is the sole officer and director of RBC and Skytrail.

## Iipay Nation

41.     **Iipay Nation**, a/k/a the Santa Ysabel Band of Diegueno Mission Indians of the Santa Ysabel Reservation, is a federally-recognized Indian tribe of Kumeyaay Indians, sometimes known as Mission Indians, located in southern California.

42.     Iipay Nation can be served at **100 Schoolhouse Canyon Rd., Santa Ysabel, CA 92070.**

## Blue Dart

43.     **Blue Dart** is a Kansas limited liability company with a primary business address of **8900 Indian Creek Pkwy Suite 300, Overland Park, KS 66210.**

44.     Blue Dart describes itself on its LinkedIn.com profile as "a solutions company for businesses big and small providing marketing, compliance, human resources, technology, and accounting services." **SEE PLAINTIFF'S EXHIBIT C.**

45.     Blue Dart's website indicates that it provides services including human resources, marketing, and accounting to its clients.

46.     Blue Dart is not registered to conduct business in the State of Florida.

47.     Blue Dart's Kansas registered agent is **Rak Services, Inc., 4200 Somerset Drive Suite 208, Prairie Village, KS 66208**.

## FACTUAL ALLEGATIONS

### Usurious Loans Prohibited in Florida

48.     The State of Florida has long recognized that lending money at usurious interest rates is immoral, harmful, and contrary to public policy.

49.     Section 687.071(3), Florida Statutes renders the issuing of a loan with annual interest rates **greater than 45%** a felony.

50.     Section 687.071(7), Florida Statutes renders any such usurious loan unenforceable in Florida, sating "No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state."

51.     Florida's usury statutes "protect against the oppression of debtors through excessive rates of interest charged by lenders." *Sheehy v. Franchise Tax Bd.*, 84 Cal.App.4th 280, 283, 100 Cal. Rptr. 2d 760 (2000). Any person who willfully makes such a loan, in addition to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

### RBC and Pruett's Loan to Mr. Tillman

52.     On November 14, 2018, Pruett and RBC, through their website, www.riverbendcash.com, issued a loan to Mr. Tillman with a principal balance of **$600** (the "**RBC Loan**"). **SEE PLAINTIFF'S EXHIBIT D.**

53.     The RBC Loan charged an interest rate of 779.86% per year, meaning Pruett and RBC stood to collect **$2,180.33** from Mr. Tillman for a 24-week loan. ***Id.***

54.     The RBC loan thus charged an interest rate which vastly exceeded the maximum lawful interest rate in Florida.

55.     The RBC Loan was therefore void and unenforceable in Florida, and amounted to an unlawful debt pursuant to Section 772.102(2), Florida Statutes.

56.     On November 23, 2018, RBC and Pruett began initiating ACH debits of $167.71 from Mr. Tillman's checking account, which he maintained in Broward County, Florida.

57.     RBC, acting under the direction of Pruett, continued to attempt to collect the RBC Loan throughout December 2018 and January 2019, via emails, calls, and texts to Mr. Tillman.

58.     As aforementioned, the making and collection, of this loan constitutes a felony pursuant to Section 687.071(3), Florida Statutes.

59.     By making the loan, and collecting interest on it, RBC and Pruett thus engaged in criminal actions against Mr. Tillman.

60.     On November 23, 2018, RBC, at the direction of Pruett, reported to FactorTrust, Inc., a nationwide *Consumer Reporting Agency* ("**CRA**"), that Mr. Tillman owed $760 on a $600 loan and that the loan status was "past due." **SEE PLAINTIFF'S EXHIBIT E.**

61.     RBC and Pruett reported to FactorTrust that the RBC loan was made November 15, 2018, but that by November 23, 2018, the loan was 15, 30, 60, 90, 120 **and** 150+ days past due. *Id*.

62.     As is plainly obvious, this information is false and factually impossible.

63.     RBC and Pruett made their report with malice, intending to injure Mr. Tillman *vis-à-vis* his credit report, making it appear to his creditors, potential creditors, employers, insurers, and others, that Mr. Tillman obtained a loan for $600 and then failed to pay it back.

64.     By damaging Mr. Tillman's credit, RBC and Pruett were attempting to ensure that the illegal RBC loan was repaid by establishing to Mr. Tillman that RBC and Pruett could report virtually anything – true or not.

### Sovereign Immunity as a Defense to State Usury Laws

65.     In an effort to avoid state usury laws, lenders such as RBC and Pruett engage in a business model commonly referred to as a *Rent-A-Tribe* scheme.

66.     In such a scheme, non-tribal payday lenders attempt to circumvent state and federal laws which prohibit usurious loans.  They do this by issuing loans in the name of a Native American tribal business entity that purports to be shielded from state and federal law via tribal sovereign immunity.  In reality, the tribal lending entity is usual a mere "front" for an illegal lending scheme; all substantive aspects of the payday lending operation are performed by individuals and entities that are unaffiliated with the Native American tribe. In exchange for "renting" the appearance of sovereign immunity to those running the payday lending scheme, the Native American tribe receives a fraction of the revenues generated, almost always in the low single digits.

67.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

68.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities']

method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

69.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, as the operations of the lender are conducted off tribal land, by non-tribal members, and predominantly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

<u>**RBC and Pruett Do Not Qualify for Immunity**</u>

70.     As aforementioned, RBC operates the payday lending website www.riverbendcash.com.

71.     To avoid state usury laws such as Florida's, RBC and Pruett claim that Riverbendcash.com is owned and operated by Riverbend Finance, LLC – a limited liability company purportedly owned by the Fort Belknap Indian Community (the "**Fort Belknap Tribe**"), a federally recognized Indian tribe and sovereign nation located within the exterior boundaries of the Fort Belknap Reservation of Montana.

72.     However, RBC reported to FactorTrust that the lender for the RBC Loan was "RBC Servicing, LLC, 1614 Hampton Road, Texarkana, TX 75503." ***Id***.

73.     Thus, according to RBC and Pruett's reports to FactorTrust, loans through riverbendcash.com are **<u>actually made by RBC</u>**, a company that Pruett owns and controls and not, as the website claims, by Riverbend Finance, LLC.

74.     Further, a review of the creation of Riverbend Finance, LLC and registration of RiverbendCash.com reveals the true owner and beneficiaries to be Pruett and RBC – not the Fort Belknap Tribe.

75.     Pruett made a deal around 2012 to "rent" the Fort Belknap Tribe's name in an effort to gain sovereign immunity.

76.     At that time, the Tribe had no experience in the consumer lending industry, having never previously engaged in lending money to non-Tribal members, commercially.

77.     As common sense would dictate, no legitimate "lender" would provide a large credit line to an impoverished group of American Indians with poor credit ratings, no real assets, and no experience in consumer lending.

78.     The credit line was not the result of a simple lender/borrower relationship, but a more nefarious scheme in which loans made by Riverbend Cash are not really made by the Fort Belknap Tribe; rather, Pruett simply hires the Tribe to *appear* to own and run it, while he and his companies maintain tight control of all operations and receive more than 97% of the profits.

79.     Public records show dozens of companies registered with the Texas Secretary of State in Pruett's name, including Gladewater Cash Now LLC, Texarkana EZ Cash Advance Inc., Sulphur Springs Cash Express LLC, and others.

80.     Archived records from the Domain Name Registration database show the website riverbendcash.com was registered on March 23, 2012, to My Cash Center, LLC, 1614 Hampton Rd., Texarkana, TX 75501. **SEE PLAINTIFF'S EXHIBIT F.**

81.     The administrative and technical contact was John Humphrey ("**Humphrey**"), jhumphrey@dmpinvestments.net, My Cash Center, LLC, 1614 Hampton Rd., Texarkana, TX 75501, phone (903) 794-0013. *Id*.

82.     Humphrey is the Chief Financial Officer of DMP Investments LLC, a company owned by Pruett.

83.     As of 2019, registration of the riverbendcash.com domain has been switched to Domains By Proxy, LLC, a service which enables its clients to maintain anonymous registrations.

84.     Current records show that the servers for riverbendcash.com have an IP address of 50.116.18.253, which corresponds to a physical location in Dallas, Texas. **SEE PLAINTIFF'S EXHIBIT G.**

85.     The address 1614 Hampton Rd., Texarkana, TX is a commercial building with the name "Roundstone" prominently displayed on the exterior. **SEE PLAINTIFF'S EXHIBIT H.**

86.     Pruett is also the managing member of Roundstone.

87.     Accordingly it is clear that Riverbend Finance, LLC operates from Texas and under the control of Pruett and RBC, and not the Fort Belknap Tribe.

88.     As Riverbend Finance, LLC is operated by, and for the primary benefit of non-tribal members, it is not entitled to the protections of sovereign immunity.

**Pruett, Skytrail and LDF Holdings**

89.     In a similar fashion, defendant Skytrail operates the website www.skytrailcash.com ("**Skytrail Cash**").

90.     Skytrail Cash *claims* to be owned and operated by Ningodwaaswi, an entity owned by LDF Holdings, and thus claims to fall under the sovereign immunity of the LDF Tribe.

91.     The LDF Tribe, through LDF Holdings, is perhaps the most active of all the federally-recognized tribes in term of attempting to rent its sovereign immunity.

92.     LDF Holdings has dozens of simultaneously active "rent-a-tribe" schemes, with myriad different non-tribal investors.

93.     The process is relatively straight-forward: the LDF Tribe mints a new "tribal" limited liability company, supposedly organized under Tribal law, for each new investor. Each new investor then runs his or her own "tribally owned" website, offering consumers loans at interest rates between 450% and 1100% annually.

94.     Despite allegedly owning and operating dozens of payday loan websites, transacting tens of millions of dollars in loans per month, until recently, *every* LDF Holdings website stated that the business office was at the same location: the second floor of a small building located at 597 Peace Pipe Rd., Lac Du Flambeau, WI 54538.

95.     In reality, no substantive services are performed at this address, as each investor operates its own lending website from its own location.

96.     Indeed, Lorenzo, President of LDF Holdings, lives in an apartment complex in Tampa – more than one thousand miles from Tribal land.

97.     Lorenzo maintains a LinkedIn profile which states that she worked for Triax Management & Dater Portflio between August 2015 and December 2016. Her description of this company practically telegraphs her former employer's business model of selling sovereign immunity to non-tribal business owners, stating her position was "**<u>Director Of Sovereign Sales</u>**," and explaining, "In today's *regulatory environment* it is very important to do business with people that will do things the right way. Triax and Dater have been building very successful businesses over the past 5 years. Our success formula is simple: *Identify Great Tribes, Financiers, Servicers and Best in Class Legal Teams* and have them work cooperatively to build a very profitable compliant business based upon consumer satisfaction." (Emphasis added.)

98.     The frequency with which LDF Holdings creates tribal corporations specifically to benefit particular non-tribal individuals, combined with the fact the CEO of LDF Holdings is a

non-tribal member apparently hired for her expertise in crafting "rent-a-tribe" agreements, suggests that LDF Holdings is more of a sovereign immunity rental agency than an actual tribal lender.

99.     Further, domain name registration records show that **skytrailcash.com** was registered, as of June 19, 2012, to My Cash Center, LLC, 1614 Hampton Rd., Texarkana, TX 75501. **SEE PLAINTIFF'S EXHIBIT I.**

100.     As with riverbendcash.com, the administrative and technical contact for skytrailcash.com was Humphrey, jhumphrey@dmpinvestments.net, My Cash Center, LLC, 1614 Hampton Rd., Texarkana, TX 75501, phone (903) 794-0013. *Id.*

101.     Pursuant to records from the Texas Secretary of State, Pruett is the owner of Skytrail Servicing Group, LLC.

102.     As such, it is clear that Pruett contracted with LDF Holdings for the purpose of claiming that the payday loans issued through www.skytrailcash.com were issued by the LDF Tribe and entitled to sovereign immunity, when, in all actuality, skytrailcash.com is operated by, and for the benefit of, Pruett and his company, defendant Skytrail Servicing Group, LLC.

### Pruett, Skytrail, and LDF Holdings Obtain Credit Reports Regarding Mr. Tillman from Clarity Services, Inc.

103.     On September 25, 2018 Pruett and Skytrail requested and obtained a consumer credit report from Clarity Services, Inc. ("**Clarity**"), a CRA, regarding Mr. Tillman.

104.     On November 14, 2018, Pruett and Skytrail again requested and obtained a credit report from Clarity regarding Mr. Tillman.

105.    In both instances, upon receipt of Pruett and Skytrail's inquiry, Clarity requested and obtained supplemental credit information regarding Mr. Tillman from Experian, another CRA, which it then included in the consumer report provided to Pruett and Skytrail.

106.    Experian maintained a record of these inquiries from Clarity. **SEE PLAINTIFF'S EXHIBIT J.**

107.    To obtain a credit report regarding a consumer, the requesting party must have a *Permissible Purpose* for doing so pursuant to the FCRA, 15 U.S.C. § 1681b.

108.    Mr. Tillman never consented to any credit report being obtained regarding him by Skytrail, Sky Trail Cash, Pruett, the LDF Tribe, LDF Holdings, or any of their related entities.

109.    At the time of the inquiries, Mr. Tillman had no accounts with Skytrail, Sky Trail Cash, Pruett, the LDF Tribe, LDF Holdings, or any of their related entities.

110.    Mr. Tillman never applied for any loan with Skytrail, Sky Trail Cash, Pruett, the LDF Tribe, LDF Holdings, or any of their related entities, or any of their related entities.

111.    Pruett and Skytrail thus lacked a permissible purpose for obtaining the credit reports regarding Mr. Tillman from Clarity and Experian – on both September 25, 2018 and November 14, 2018.

112.    Due to their participation in the Rent-A-Tribe scheme, knowledge, and active involvement in requesting consumer reports, LDF Holdings is jointly and severally liable with Pruett and Skytrail for the impermissible credit pull on September 25, 2018 and November 14, 2018.

113.    On information and belief, Pruett and Skytrail purchased information regarding Mr. Tillman from an online *Lead Generator* which provided information regarding Mr. Tillman such as his name, addresses, employers, and bank account information.

114.    Pruett and Skytrail then pulled the reports from Clarity and Experian to determine if Mr. Tillman was a suitable candidate for a loan.

115.    On information and belief, the lead generator never disclosed, to Mr. Tillman, the identity of the end user(s) of his personal information or that any of the defendants would receive his credit report.

116.    Further, November 14, 2018, the date upon which Skytrail obtained Plaintiff's credit report, is *the exact same date* which RBC issued a loan to Mr. Tillman.

117.    Notably, no RBC inquiry appears in Plaintiff's consumer disclosure.

118.    As such, RBC used the credit reports obtained by Pruett and Skytrail in evaluating Mr. Tillman for a loan.

119.    The fact that one of Pruett's lending enterprises – RBC – issued a loan based upon two credit reports obtained by another of his enterprises – Skytrail – clearly shows that Pruett is in fact the owner and operator of these lenders, not the different tribes as they claim.

120.    Alternatively, RBC in fact requested the credit reports, but falsely certified to Clarity and Experian that Skytrail was requesting the credit reports.

### Welch, Creditserve, Niizhwaaswi, and LDF Holdings

121.    LDF Holdings also rents its immunity to Eric Welch and his company, Creditserve.

122.    Welch and Creditserve lend through www.loanatlast.com ("*Loan at Last*") and the allegedly tribal limited liability company, Niizhwaaswi, LLC.

123.    Welch and Creditserve are the true issuers, servicers, and owners of the usurious loans issued through *Loan at Last* and Niizhwaaswi.

124.    Welch and Creditserve also control the operations of *Loan at Last* and Niizhwaaswi.

125. Indeed, Welch is a veteran of payday lending and owns, or owned, many payday lending companies, including Helping Hand Financial, Inc. ("**Helping Hand**"), which did business in Texas as CashCash, Inc.

126. Around January 2015, Welch purchased the domain name www.loanatlast.com, evidencing his ownership and control of the lending website – not the LDF Tribe.

127. Further, a record of inquiries made with ChexSystems, Inc., a Jacksonville, Florida CRA frequently utilized by the online payday lending industry, indicates that when "*Loan at Last*" requested a report on another consumer, the inquiry was received from "CREDITSERV/LOANATLAST" in Los Angeles, California, not Lac Du Flambeau, Wisconsin. **SEE PLAINTIFF'S EXHIBIT K**.

128. Thus, CreditServe – not the LDF Tribe – operates *Loan at Last* and processes consumer applications, obtains leads, and otherwise controls the company.

**Welch and CreditServe Obtain Three Credit Reports Regarding Mr. Tillman**

129. On October 3, 2019, March 2, 2020, and April 10, 2020, Welch and CreditServe, via Niizhwaaswi and *Loan at Last*, requested and obtained credit reports regarding Mr. Tillman from Clarity.

130. Clarity, in turn, obtained supplemental data from Experian, which it incorporated into the report it sold to Welch and CreditServe.

131. A record of these inquiries was recorded by Experian. **SEE PLAINTIFF'S EXHIBIT J.**

132. The inquiries were made with the knowledge of Niizhwaaswi and LDF Holdings, who authorized and condoned such activities.

133.    Indeed, on information and belief, Niizhwaaswi and LDF Holdings stood to gain from whatever revenue Welch and CreditServe might potentially collect from Mr. Tillman.

134.    Mr. Tillman never consented to any credit report being obtained regarding him by *Loan at Last*, the LDF Tribe, LDF Holdings, Welch, Niizhwaaswi, CreditServe, or any related entities.

135.    At the time of each of the inquiries, Mr. Tillman did not have any open accounts at with *Loan at Last*, the LDF Tribe, LDF Holdings, Welch, Niizhwaaswi, and/or CreditServe.

136.    Welch and CreditServe thus lacked a permissible purpose – on each of their three requests – for obtaining credit report regarding Mr. Tillman from Clarity and Experian.

137.    Due to their participation in the Rent A Tribe scheme, knowledge, and active involvement in requesting consumer reports, Niizhwaaswi and LDF Holdings are jointly and severally liable with Welch and CreditServe for each of their impermissible credit report requests.

### LDF Holdings, Niswi, Dunn & Pinnacle

138.    LDF Holdings rents its immunity to yet a third group of non-tribal "investors" – Pinnacle and Dunn.

139.    Pinnacle and Dunn are the true beneficial owners of LendUMo, previously Amplify Funding, an online payday lender which makes loans to consumers at interest rates in excess of 700% annually through its website, www.lendumo.com.

140.    LendUMo claims to be owned by Niswi, which in turn is owned by LDF Holdings.

141.    However, Dunn and Pinnacle simply pay a small percentage of revenues – around 1% to 2% -- to the LDF Tribe which, in exchange, claims to own and operate the lender, creating a veneer of sovereign immunity from criminal prosecution for usury under Florida law.

142.    As aforementioned, Pinnacle is a continuation of Soaren Management.

143.    Soaren – not the LDF Tribe – maintained offices in the Phoenix and Las Vegas areas which underwrote, serviced, performed customer service duties, and collected payments from consumers on LendUMo's loans.

144.    Telephone calls to Amplify Funding's "tribal" customer service phone number were answered by Soaren employees in its Las Vegas office.

145.    Further, Dunn and Soaren certified to FactorTrust, a nationwide credit reporting agency ("CRA") regarding a credit inquiry, as "Niswi/Amplify Funding, 20830 N. Tatum Blvd., Suite 115, Phoenix, AZ 85050; phone: 480-550-8178; email: info@**soaren-management.com**." **SEE PLAINIFF'S EXHIBIT L.**

146.    The aforementioned address, phone number, and email all belong to the Dunn's company, Soaren.

147.    Thus, while reports about consumer's payment history on Amplify Funding loans were supposedly made to a credit bureau by Niswi, the address of the furnisher of information indicated the report came from Soaren's offices in Phoenix, and contained Soaren's phone number and email address.

148.    As such, it is clear that Niswi and LendUMo operate under a Rent-A-Tribe scheme, with Dunn and Pinnacle as the true owners and beneficiaries.

### LDF Holdings, Dunn, Niswi & Pinnacle
### Impermissibly Obtain a Credit Report on Mr. Tillman

149.    On January 31, 2018, Dunn and Pinnacle obtained a credit reporting regarding Mr. Tillman from FactorTrust, Inc. – another nationwide CRA. **SEE PLAINIFF'S EXHIBIT L.**

150.    Mr. Tillman first learned of the credit pull when he requested his FactorTrust consumer disclosure on January 18, 2020.

151.     Dunn and Pinnacle's inquiry was made with the knowledge of LDF Holdings and Niswi, who authorized and condoned the credit pull.

152.     Indeed, on information and belief, LDF Holdings and Niswi stood to gain from whatever revenue Dunn and Pinnacle might potentially collect from Mr. Tillman.

153.     Mr. Tillman never consented to any credit report being obtained regarding him by Niswi, Pinnacle, LendUMo, LDF Holdings, Dunn, or any related entities.

154.     At the time of each of the inquiries, Mr. Tillman did not have any open accounts with Niswi, Pinnacle, LendUMo, LDF Holdings, or Dunn.

155.     Dunn and Pinnacle thus lacked a permissible purpose for obtaining the credit report regarding Mr. Tillman from FactorTrust.

156.     Due to their participation in the Rent A Tribe scheme, knowledge, and active involvement in requesting consumer reports, LDF Holdings and Niswi are jointly and severally liable with Pinnacle and Dunn for the impermissible credit report request.

### **Blue Dart and Iipay Nation**

157.     Iipay Nation engages in online lending through the websites https://arrowone.loan and arrowonelending.com ("**Arrow One**").

158.     Arrow One charges interest rates between 420% to 720% annually.

159.     Domain Name Registration records from January 3, 2013 show that Arrow One was registered to Rare Moon Media, 4551 W 107th St., Suite 250, Overland Park, Kansas 66207. **SEE PLAINTIFF'S EXHIBIT M.**

160.     The Administrative Contact was Jeremy Shaffer ("**Shaffer**"), Rare Moon Media, 4551 W 107th St., Suite 250, Overland Park, Kansas 66207, phone (913) 951-8361, email david@summitkc.com. *Id.*

161.    Rare Moon Media, LLC was formed in 2010 and is the predecessor company of Blue Dart.  It was owned Shaffer, Steve Mitchem, and Josh Mitchem.

162.    Rare Moon's 2016 annual report to the Kansas Secretary of State, dated April 5, 2017, indicated that its mailing address was **8900 Indian Creek Parkway, Suite 300, Overland Park, KS 66210**. **SEE PLAINTIFF'S EXHIBIT N.**

163.    Around this time, Rare Moon disappeared, only to be replaced by Blue Dart.

164.    Blue Dart's owner is Steve Mitchem; Shaffer is Executive Vice President, Business Development; Josh Mitchem is Chief Operating Officer. **SEE PLAINTIFF'S EXHIBIT O.**

165.    Blue Dart thus shared at least three officers with Rare Moon.

166.    Blue Dart maintains an office at the same location used by Rare Moon, **8900 Indian Creek Parkway, Suite 300, Overland Park, KS 66210**.

167.    Blue Dart provided this address as their primary business location to, among other places, the Better Business Bureau. **SEE PLAINTIFF'S EXHIBIT P.**

168.    The online resumes of key employees, like Bethanie White, Director of Marketing, indicate that their employment with Rare Moon stopped when their employment with Blue Dart began. **SEE PLAINTIFF'S EXHIBIT Q.**

169.    Rather than create sham offshore companies in the West Indies, Blue Dart seeks to hide from legal liability by using Native American tribes including the Flandreau Santee Sioux Tribe in South Dakota and the Iipay Nation for cover.

170.    Blue Dart is the entity responsible for buying leads, obtaining consumer credit reports to qualify those leads, underwriting, servicing, and collecting loans made, and other operational activities.

171.    Blue Dart and its non-tribal investors and affiliates supply the capital to make the "tribal" payday loans and retain the overwhelming majority of profits from the lending business.

172.    Blue Dart pays the Iipay Nation a nominal amount – around two to three percent of revenues – to claim ownership and control of Arrow One, giving it the appearance of being owned and operated by a Native American tribe.

173.    Blue Dart is the appointed agent and/or authorized service provider for Arrow One.

174.    Iipay Nation certified to Clarity and Experian that Arrow One was the end user of consumer reports and that Blue Dart was an agent under its control.

175.    Iipay Nation knew such certifications were meaningless and that it would not be the end user of any report, since all loan underwriting and marketing was performed by Blue Dart and their non-tribal contractors. Nonetheless, the Iipay Nation knowingly participated in a scheme to allow Blue Dart unfettered access to millions of consumer's consumer credit reports, including Mr. Tillman.

176.    Indeed, on September 25, 2018, Blue Dart, as "agent" for the Iipay Nation, obtained a consumer credit report regarding Mr. Tillman from both Clarity and Experian. **SEE PLAINTIFF'S EXHIBIT J.**

177.    However, Mr. Tillman did not apply for any loan with Arrow One, Blue Dart, or the Iipay Nation.

178.    Rather, Blue Dart obtained Mr. Tillman's basic personal information from an online lead generator – likely the same lead generator which sold Mr. Tillman's information to Skytrail.

179.    Thus, Blue Dart knowingly obtained consumer credit reports regarding Mr. Tillman without a permissible purpose.

180.     The Iipay Nation authorized Blue Dart, its agent, to make such requests, and, pursuant to their agreements with the CRAs, was in control of Blue Dart.

181.     Mr. Tillman has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FCRA
### *Pruett, Skytrail, & LDF Holdings only*

182.     Mr. Tillman incorporates Paragraphs 1 – 181 as if fully restated herein.

183.     Skytrail, Pruett and LDF Holdings violated **15 U.S.C. § 1681b(f)** when, pursuant to polices put in place by Pruett and LDF Holdings, Skytrail knowingly obtained a credit report regarding Mr. Tillman from both Experian and Clarity without any permissible purpose on **two separate occasions**, for a total of four reports, by requesting a credit report  in connection with an alleged *credit transaction* initiated by Mr. Tillman, when Mr. Tillman had no business or loan with Skytrail, and Mr. Tillman never applied for or requested any credit or engaged in any other business transaction with Skytrail.

184.     On information and belief, Mr. Tillman's information had been purchased from a lead generator at a time when Mr. Tillman had no account with Skytrail.

185.     LDF Holdings knowingly authorized, condoned, facilitated and participated in the scheme, and is thus jointly and severally liable.

186.     Assuming, *arguendo,* that Mr. Tillman had applied for a loan with Skytrail or similar, such loan would have been *void ab initio* due to Florida's usury laws, and Skytrail and its Associates still would not have permissible purpose to obtain a credit report.

187.     Skytrail, Pruett, and LDF Holdings are thus jointly and severally liable for the above-stated violations.

188.     As a result of their conduct, Skytrail, Pruett and LDF Holdings are jointly liable to Mr. Tillman pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Tillman respectfully requests this Honorable Court enter judgment against Pruett, Skytrail, and LDF Holdings, jointly and severally, for:

a.   The greater of statutory damages of **$1,000.00** per violation (for a total of **$4,000.00**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Tillman's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.   Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.   Such other relief that this Court deems just and proper

## COUNT II
## VIOLATIONS OF THE FCRA – *Pruett & RBC Only*

189.     Mr. Tillman incorporates Paragraphs 1 – 181 as if fully restated herein.

190.     Pruett and RBC violated **15 U.S.C. § 1681b(f)** when they obtained and used credit reports regarding Mr. Tillman from Clarity and Experian to evaluate Mr. Tillman for a loan which was void and usurious pursuant to Florida law.

191.     Pruett and RBC violated **15 U.S.C. § 1681q** when they knowingly obtained a credit report from both Clarity and Experian, regarding Mr. Tillman, on November 14, 2018, under the

false pretenses that the reports were requested by "Sky Trail Cash," when in fact the reports were requested by RBC and utilized to evaluate Mr. Tillman for an illegal loan issued by RBC.

192.    As a result of their conduct, Pruett and RBC are liable to Mr. Tillman pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Tillman respectfully requests this Honorable Court enter judgment against Pruett and RBC, jointly and severally, for:

a.   The greater of statutory damages of **$1,000.00** per incident (for a total of **$2,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Tillman's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.   Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.   Such other relief that this Court deems just and proper

### COUNT III
### VIOLATIONS OF THE FCRA
#### *Welch, Creditserve, Niizhwaaswi, and LDF Holdings only*

193.    Mr. Tillman incorporates Paragraphs 1 – 181 as if fully restated herein.

194.    Welch, Creditserve, Niizhwaaswi, and LDF Holdings violated **15 U.S.C. §1681b(f)** when, pursuant to policies put in place by Welch and LDF Holdings, Creditserve, acting by and through Niizhwaaswi, knowingly obtained credit reports from Experian and Clarity without any permissible purpose on **three separate occasions** by requesting the credit reports in connection with an alleged *credit transaction* between Mr. Tillman and *Loan at Last*, when Mr. Tillman had

no business or loan with *Loan at Last*, and Mr. Tillman never applied for or requested any credit or engaged in any other business transaction involving Welch, Creditserve, Niizhwaaswi, and LDF Holdings (together, "**Welch and his Associates**").

195.     Assuming, *arguendo,* that Mr. Tillman had applied for a loan with *Loan at Last* or one of its related lenders, such loan would have been *void ab initio* due to Florida's usury laws, and neither *Loan at Last* nor Welch and his Associates would have had any permissible purpose to obtain a credit report .

196.     Welch and his Associates are thus jointly and severally liable for the above-stated violations.

197.     As a result of their conduct, Welch and his Associates are liable to Mr. Tillman pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Tillman respectfully requests this Honorable Court enter judgment against Welch, Creditserve, Niizhwaaswi, and LDF Holdings, jointly and severally, for:

a.     The greater of statutory damages of **$1,000.00** per incident (for a total of **$3,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Tillman's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.     Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.     Such other relief that this Court deems just and proper.

**COUNT IV**
**VIOLATIONS OF THE FCRA**
*Dunn, Niswi, LDF Holdings, & Pinnacle only*

198.    Mr. Tillman Mr. Tillman adopts and incorporates paragraphs 1 – 181 as if fully stated herein.

199.    Dunn, Niswi, Pinnacle, and LDF Holdings violated **15 U.S.C. § 1681b(f)** when, pursuant to policies put in place by Dunn, Pinnacle and LDF Holdings, Niswi, knowingly obtained a credit report regarding Mr. Tillman from FactorTrust  without any permissible purpose, as Niswi requested the credit report in connection with an alleged *credit transaction* initiated by Mr. Tillman and *LendUMo*, when Mr. Tillman had no business or loan with Niswi or *LendUMo*, and Mr. Tillman never applied for or requested any credit or engaged in any other business transaction involving Dunn, Niswi, Pinnacle, *LendUMo* and LDF Holdings (together, "**Dunn and his Associates**").

200.    Assuming, *arguendo,* that Mr. Tillman had applied for a loan with *LendUMo* or one of its related lenders, such loan would have been *void ab initio* due to Florida's usury laws, and neither *LendUMo* nor Dunn and his Associates would have had any permissible purpose to obtain a credit report .

201.    Dunn and his Associates are thus jointly and severally liable for the above-stated violations.

202.    As a result of their conduct, Dunn and his Associates are liable to Mr. Tillman pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Tillman respectfully requests this Honorable Court enter judgment against Dunn, Niswi, Pinnacle, and LDF Holdings, jointly and severally, for:

a.     The greater of statutory damages of **$1,000.00** per incident (for a total of **$1,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Tillman's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.     Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. §1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.     Such other relief that this Court deems just and proper.

## COUNT V
## VIOLATIONS OF THE FCRA – *Iipay Nation and Blue Dart only*

203.    Mr. Tillman incorporates Paragraphs 1 – 181 as if fully restated herein.

204.    Blue Dart and Iipay Nation violated **15 U.S.C. § 1681b(f)** when Blue Dart obtained a credit report regarding Mr. Tillman from Clarity and Experian without any permissible purpose, and Iipay Nation knowingly authorized, condoned, facilitated and participated in the scheme.

205.    Blue Dart certified to Experian and Clarity that its requests, ostensibly on behalf of the "end user" Iipay Nation/Arrow One were in connection with an alleged credit transaction initiated *by* Mr. Tillman. However, Blue Dart and Iipay Nation knew or should have known that Mr. Tillman had not applied for a loan with Arrow One, but rather that his information had been purchased from a lead generator and that no permissible purpose to obtain a credit report existed.

206.    Blue Dart and Iipay Nation violated **15 U.S.C. § 1681b(f)** and **§ 1681q** when Blue Dart, as agent or authorized service provider for the Iipay Nation, knowingly obtained Mr. Tillman's credit reports under false pretenses, claiming the Iipay Nation was the true end user of the report, when Blue Dart and its non-tribal contractors were.

207.    Assuming, *arguendo,* that Mr. Tillman had applied for a loan with Arrow One or Iipay Nation, such loan would have been *void ab initio* due to Florida's usury laws, and neither Arrow One or Iipay Nation would have had a permissible purpose to obtain a credit report.

208.    As a result of their conduct, Blue Dart and Iipay Nation are jointly liable to Mr. Tillman pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Tillman respectfully requests this Honorable Court enter judgment against Blue Dart and Iipay Nation, jointly and severally, for:

a.  The greater of statutory damages of **$1,000.00** per incident (for a total of **$2,000.00** pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Tillman's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.  Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

d.  Such other relief that this Court deems just and proper.

### COUNT VI
### VIOLATIONS OF THE CRCPA –
### *RBC & Pruett Only*

209.    Mr. Tillman incorporates Paragraphs 1 – 181 as if fully restated herein.

210.    RBC and Pruett violated **Section 772.103(1), Florida Statutes**, when they, with criminal intent, received proceeds derived directly from the collection of an unlawful debt – the

RBC Loan – and used such proceeds in the continued operation of their ongoing business enterprise.

211.   RBC and Pruett violated **Section 772.103(2), Florida Statutes**, when they collected an unlawful debt from Mr. Tillman – the RBC Loan - and obtained proceeds therefrom, which they used in the operation of their ongoing business enterprise.

212.   RBC and Pruett violated **Section 772.103(3), Florida Statutes**, when they were employed by, or associated with, an enterprise that participated in the making of usurious loans with interest rates far in excess of the maximum legal rate in Florida, and collecting the unlawful debts created by such usurious loans.

213.   RBC and Pruett's intent is clear in that they knowingly engaged in a pattern where they made loans well in excess of 45% interest per annum, in clear violation of Florida law, and then proceeded to collect these unlawful debts and obtain proceeds therefrom, though ACH debits, phone calls and emails to Mr. Tillman at his home in Florida.

214.   RBC and Pruett's conduct renders them liable for the above-stated violations of the CRCPA.

**WHEREFORE,** Mr. Tillman respectfully requests that this Honorable Court enter judgment against RBC and Pruett, jointly and severally, for:

a.   Threefold the amount of actual damages of at least **$167.00** (for a total of **$501.00**), or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Section 772.104(1), Florida Statutes;

b.   Reasonable costs and attorneys' fees pursuant to Section 772.104(1), Florida Statutes; and,

c.   Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VII
## VIOLATIONS OF THE FCCPA
### *RBC & Pruett Only*

215.     Mr. Tillman incorporates Paragraphs 1 – 181 as if fully restated herein.

216.     RBC and Pruett violated **Section 559.72(9), Florida Statutes**, when they asserted the existence of a legal right which does not exist, specifically the right to collect an online payday loan – the RBC Loan - issued at an interest rate over 779% annually, when such loan was null, void, and unenforceable pursuant to Florida law.

217.     RBC and Pruett violated **Section 559.72(9), Florida Statutes**, when they asserted a debt was legitimate when it was not, when they emailed, called and texted Mr. Tillman in December 2018 and January 2019, claiming various amounts, but always more than $766, were owed on the RBC Loan, when such loan was null, void, and unenforceable against Mr. Tillman.

218.     RBC and Pruett violated **Section 559.72(9), Florida Statutes**, when they both asserted a debt was legitimate when it was not, and asserted legal rights that did not exist, by reporting false information about Mr. Tillman to FactorTrust, a CRA, with malicious intent and desire to cause injury to Mr. Tillman. Federal law, the FCRA, prohibits the intentional reporting of false consumer loan information.

219.     RBC and Pruett acted willfully in making a usurious loan to Mr. Tillman and in pursuing collection of the loan in Florida. The business model of RBC and Pruett predicates itself on asserting an affirmative defense to violation of Florida law – purported sovereign immunity. The fact that RBC and Pruett prominently, and affirmatively, assert legal defenses to their actions establishes they are very well aware of the illegality of their lending business.

220.     The conduct of RBC and Pruett renders them liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Mr. Tillman respectfully requests that this Honorable Court enter judgment against RBC and Pruett, jointly and severally, for:

a.      Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.      Actual damages of at least **$167.00**, pursuant to Section 559.77(2), Florida Statutes;

c.      Injunctive relief prohibiting the RBC and Pruett from making any further collection attempts which violate Florida law pursuant to Section 559.77(2), Florida Statutes;

d.      Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

e.      Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Tillman hereby demands a jury trial on all issues so triable.

Respectfully submitted on September 23, 2020, by:

SERAPH LEGAL, P. A.

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
2002 E. 5th Avenue, Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

**<u>EXHIBIT LIST</u>**

A.  River Bend Cash's "Standard Biweekly Loan" as of June 30, 2020
B.  Skytrail Cash's "Standard Interest Rate" as of June 30, 2020
C.  Blue Dart's LinkedIn® as of June 30, 2020
D.  Plaintiff's RBC Loan Agreement, Excerpt
E.  Plaintiff's FactorTrust Consumer Disclosure, RBC Loan Tradeline
F.  Riverbendcash.com Domain Name Registration Records
G.  Riverbendcash.com IP Address Information
H.  Google Street View for 1614 Hampton Rd., Texarkana, TX
I.  Domain Registration Records for skytrailcash.com
J.  Plaintiff's Experian Disclosure, September 17, 2020, Inquiries Excerpt
K.  Inquiry Appearing on unrelated Consumer's FactorTrust Disclosure
L.  Plaintiff's FactorTrust Consumer Disclosure, January 18, 2020, Inquiries Excerpt
M.  Domain Registration Records for Arrow One
N.  Rare Moon's 2016 Annual Report
O.  Blue Dart's Website Screenshot, May 31, 2020
P.  Better Business Bureau® Report on Blue Dart
Q.  LinkedIn® Resume of Bethanie White